

CLERK'S OFFICE
A TRUE COPY
Oct 16, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JASPREET SINGH (DOB: 10/xx/2001) | ) ) ) ) ) | Case No. 25-M-542 (SCD) |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **between 06/10/24 - 12/10/24** in the county of **Milwaukee** in the **Eastern** District of **Wisconsin**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

John Modransky, Special Agent, DOT-OIG
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: 10-16-25

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, John Modransky, being duly sworn under oath, states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the U.S. Department of Transportation (DOT), Office of Inspector General (OIG) and have been employed since August 2019. I am currently assigned to DOT-OIG's Midwestern Region. As part of my job, I am responsible for investigating various federal crimes, including program fraud, identity theft, wire fraud, and fraudulent statements submitted to the government. I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Academy in Glynco, GA, where I was trained in various law enforcement methods, including physical surveillance, interviewing, computer analysis, and financial analysis. I have also participated in arrest warrants and search warrants of various types of properties. Before joining DOT-OIG, I was employed as an Investigator with the Chicago Public Schools, Office of Inspector General, for approximately four years. The facts set forth in this Affidavit are based on my personal participation in this investigation and from information provided by federal agents, and state partners. I am incorporating my experience, training, and background as a DOT-OIG Special Agent.

2. This affidavit is submitted in support of an application for a Criminal Complaint charging **JASPREET SINGH** (J.SINGH), DOB: 10/xx/2001, with helping to orchestrate a conspiracy to defraud the Wisconsin Division of Motor Vehicles, in violation of the Commercial Motor Vehicle Safety Act of 1978 and of Title 18 U.S.C. § 371, and with using an interstate wire to obtain money from false pretenses, in violation of Title 18 U.S.C. § 1343, between June 10, 2024, and December 10, 2024, in Milwaukee County, in the Eastern District of Wisconsin.

3. This affidavit is based on my personal investigation and on information from other law enforcement officers, witnesses, and a review of recordings and video footage. This affidavit is merely intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**JURISDICTION**

4. This Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in Title 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States that has jurisdiction over the offense being investigated," *see* 18 U.S.C. § 2711(3)(A)(i).

**RELEVANT STATUTES**

5. Title 18 U.S.C. § 1343 makes it a federal crime to devise or participate in a scheme to defraud, or obtain money by false pretenses, through the use of interstate wires. Title 18 U.S.C. § 371 makes it a federal crime to knowingly and intentionally conspire to commit an offense against the United States or to defraud the United States.

6. Additionally, the DOT-OIG is a federal agency of the United States and was created by the Inspectors General Act of 1978. Matters related to commercial driver's license (CDL) and commercial learner's permit (CLP) requirements pertaining to testing and fraud prevention fall under the jurisdiction of the United States pursuant to the Commercial Motor Vehicle Safety Act of 1986, which mandates that states adopt uniform standards for testing and licensing, detailed in 49 Code of Federal Regulations (CFR) Part 383, by the Federal Motor Carrier Safety Administration, along with 49 CFR Part 384, and 49 U.S.C. § 31305.

7. In Wisconsin, the Wisconsin Department of Transportation (WisDOT) through its Division of Motor Vehicles (DMV) regulates CDLs and CLPs. WisDOT ensures that CDL and

2

CLP holders meet federal and state requirements for driving commercial vehicles, including medical fitness, knowledge and skills, and compliance with traffic laws. Wisconsin (Wis.) Statute (Stat.) § 343 governs driver licenses, addressing who needs one, the different types, and the rules for obtaining and maintaining them. Section 342.02 of Wis. Stat., governing operator's license, requires that its rules align with, and be at least as strict as, the standards set by the federal Commercial Motor Vehicle Safety Act (49 U.S.C. 31301 to 31317) and the regulation adopted under that Act. This means Wisconsin regulations for operator's licenses, to include commercial motor vehicles (CMV), must follow the definitions and requirements outlined in 49 U.S.C. § 31301 and related federal law.

8. 49 U.S.C. § 31301 establishes definitions for CDLs, CLPs, and CMVs. These include defining a CDL and CLP as a state-issued license permitting the operation of a CMV as a vehicle used in commerce for transporting people and property.

9. 49 U.S.C. § 31301 sets the fundamental definitions for CDLs, CLPs, and CMVs, and Wis. Stat. § 343 incorporates and must adhere to these federal standards in its management of driver's license regulations to include CMVs. The issuance of CDLs and CLPs by states is primarily governed by 49 CFR Part 383 and 49 CFR Part 384.

10. 49 CFR Part 383 establishes the federal standards for CDLs and CLPs, including requirements for knowledge and skills tests, license endorsements, and general CDL and CLP requirements. Specifically, 49 CFR 383.23 addresses the CDL and CLP, stating that no person shall operate a CMV without a CDL or CLP meeting federal standards. To comply with Part 383.23, drivers must have passed knowledge and driving tests aligning with federal standards (subparts F, G, and H of Part 383) for the specific CMV the driver will operate. Subpart F (Vehicle Groups and Endorsements) defines the different classifications of commercial motor vehicles and the

3

endorsements (e.g. hazardous materials, passenger, or school bus) that drivers need; Subpart G (Required Knowledge and Skills) defines the specific knowledge and skills that drivers must demonstrate to obtain a CDL and CLP; Subpart H (Test Standards) outlines the minimum standards that state-administered knowledge and skills tests must meet; and Subpart J (Licensing Procedures) address the procedures for issuing and managing CDLs and CLPs. A driver must possess a valid CDL from their state or jurisdiction of domicile that meets the standards in subpart J of Part 383. Furthermore, the CDL must be issued by the driver's state or jurisdiction of domicile.

11. 49 CFR Part 384 details the requirements for states to achieve and maintain substantial compliance with the federal CDL and CLP program. It covers areas to include CDL and CLP issuance procedures, information management, and data sharing.

12. 49 U.S.C. § 31305 establishes minimum standards for written and driving tests for CMV operators. The tests are required for those operating or intending to operate CMVs in a vehicle representative of the type they will drive. The standards can vary for different CMV classes and must include minimum passing scores. The tests aim to ensure operators understand safe CMV operation regulations and vehicle safety systems.

## PROBABLE CAUSE

### Background

13. According to a Confidential Human Source (CHS),[1] since approximately 2019, he/she had worked with other conspirators to help numerous paid customers obtain their CDLs through fraudulent means. According to the CHS, members of the conspiracy including the CHS

---

[1] According to a law enforcement database, CHS criminal history includes the following: (1) a January 2015 arrest for false swearing (non-criminal) (WI Statue § 946.32) which was dismissed; (2) a March 2015 arrest for possession of child pornography (WI Statue § 948.12) which was also dismissed; and (3) a February 2018 felony conviction for making threats to communicate derogatory information (WI Statue § 943.31). CHS served a sentence of probation for this conviction. CHS has not been compensated for information he/she has provided.

and J. SINGH, would recruit potential customers or clients who would pay the conspirators a fee to obtain their CDLs through fraudulent means, i.e., without having to study for the knowledge portion of the CDL exam, and without having to demonstrate the necessary skills on the driving portion of the exam. For a fee, the CHS (or others) would help the clients cheat on the knowledge portion of the exam to obtain their CLP. Then, other members of the conspiracy would help the customers pass the driving portion of the exam without having to demonstrate mastery of the necessary skills. Each member of the conspiracy would receive a portion of the fee paid by the client or customer.

14. On or about February 15, 2024, law enforcement made contact with the CHS, after which the CHS agreed to assist law enforcement in investigating the conspiracy ring. Even after CHS began working with law enforcement, which was unknown to J. SINGH, J. SINGH continued to make contact with CHS to see if J. SINGH could continue to help clients obtain their CDL's with the assistance of CHS and others.

15. Special agents with DOT-OIG and the FBI conducted a series of undercover operations in which the CHS would assist clients brought to him/her by J. SINGH by helping them cheat on the knowledge exam. These operations were conducted in conjunction with the Wisconsin Department of Transportation. Once the client passed the knowledge exam by cheating, the Wisconsin DOT would withhold the issuance of the client's CLP under the guise of a clerical error or computer glitch. None of the operations described below resulted in the issuance of a CLP or CDL by the Wisconsin DOT.

## The Operations

16. Between June 10, 2024, and December 10, 2024, J. SINGH and the CHS engaged in a series of recorded phone conversations discussing clients of J. SINGH that sought to obtain

their CDLs and CLPs through fraudulent means. J. SINGH found and/or recruited the clients who wished to obtain their CDLs through fraudulent means.

17. J. SINGH then arranged for these clients to take the knowledge portion of the exam with the CHS's assistance. The CHS's method in helping the clients cheat on their CLP test was to have the clients wear a turban concealing Bluetooth in-ear headphones, which played the test questions through over-ear headphones worn on top of the clients' turbans. The CHS would listen to the questions remotely and provide the clients with the corresponding answers.[2] See picture below.



**Pictured above is B. Singh taking the knowledge portion of the CLP exam.**

---

[2] According to the CHS, he/she had knowledge of the answers because he/she had taken and passed the CLP exam.

18. The CHS claimed that WI DMVs allowed assisted listening devices to test takers who had a limited understanding of English. Additionally, J. SINGH told the CHS that he wanted 40% of the payment from all clients that were referred to the CHS.

19. After passing the knowledge portion of the exam through fraudulent means, J. SINGH would then arrange for the clients to pass the driving portion of the exam as well. For assisting clients in helping them obtain their CDL through fraudulent means, the clients would pay J. SINGH a fixed fee, which would be shared with other conspirators, including the CHS for his role in assisting with the knowledge portion of the exam. It is unknown precisely how J. SINGH would assist clients in passing the driving portion of the exam to obtain their CDL.

20. DOT-OIG Special Agents, along with FBI agents, conducted undercover operations in which J. SINGH would bring clients to CHS for the knowledge portion of the exam. During these operations, J. SINGH recruited and brought four (4) clients to the CHS.

**Operation 1**

21. On June 28, 2024, the CHS and J. SINGH discussed via recorded telephone call meeting with J. SINGH and CLP client **Bhupinder Singh** (B. Singh). The conversation pertained to which date worked best for B. Singh to take the CLP exam. Furthermore, J. SINGH gave assurances to the CHS that B. Singh would pay the CHS for his/her part in helping B. Singh cheat on the CLP exam. J. SINGH told the CHS that B. Singh would pay J. SINGH and then J. SINGH would pay a portion to the CHS.

22. On July 2, 2024, DOT-OIG Special Agents conducted surveillance of CLP client B. Singh and the CHS in and around the Milwaukee-Northeast DMV located at 6073 N. Teutonia Avenue, Milwaukee, WI 53209. DOT-OIG Special Agents were in contact with the CHS during the surveillance. During the surveillance, the CHS successfully assisted B. Singh in cheating on

7

the Wisconsin DMV CDL exam by telling B. Singh the answers through the Bluetooth device. Due to the CHS's cheating assistance, B. Singh passed the exam. B. Singh later attempted to Zelle the CHS $1,500 as payment for their services.

23. On July 2, 2024, the CHS and J. SINGH spoke via recorded telephone call regarding an additional CLP client that J. SINGH wanted to refer to the CHS. J. SINGH asked the CHS if they could meet the client the next day, and how much they should charge the CLP client. Both the CHS and J. SINGH agreed that the respective CLP client pay $2,000 and then be given a $200 discount. The CHS confirmed with J. SINGH that the CLP client wanted the CLP and not a driver's license.

24. On July 2, 2024, the CHS and J. SINGH spoke via recorded telephone call discussing B. Singh's payment. The CHS asked J. SINGH what he wanted for his share of B. Singh's payment. J. SINGH told the CHS that they can give him whatever the CHS thinks is appropriate. Furthermore, J. SINGH told the CHS that they had a new CLP client, and that the client needed to be taken care of as soon as possible since it was the start of the month when clients have the money.

25. On July 3, 2024, the CHS and J. SINGH spoke via recorded telephone call multiple times regarding problems with B. Singh's payment to the CHS for their assistance in helping B. Singh pass his CLP exam through fraudulent means. The CHS and J. SINGH came to an agreement that J. SINGH would Zelle the CHS $700 and J. SINGH would collect the money directly from B. Singh.

26. On July 3, 2024, DOT-OIG was notified by the CHS that B. Singh's $1500 Zelle transaction was rejected. Therefore, the CHS said that J. SINGH would be picking up the payment from B. Singh and that J. SINGH would provide the CHS with his/her portion of the payment. J.

8

SINGH used the financial service platform, Cash App, to send the CHS $901, approximately 60%, of the payment from B. Singh. J. SINGH sent the CHS $701, and $200 via two separate transactions on July 3, 2024. The $200 transaction posted on July 4, 2024.



27. On July 3, 2024, the CHS and J. SINGH spoke via recorded telephone call. The CHS notified J. SINGH that they received the money in their account. The CHS and J. SINGH talked strategy regarding the new CLP client. The CHS and J. SINGH discussed wanting to ask the client for $2,000. But they agreed to "settle" at $1,800 for the CHS's assistance in helping the CLP client fraudulently obtain their CLP. J. SINGH told the CHS to make sure the CHS was ready to take the CLP client to the WI DMV to test on Monday.

**Operation 2**

28. On July 8, 2024, the CHS and J. SINGH spoke, via recorded telephone call. J. SINGH notified the CHS that the new CLP client's name was "Babbu" (Daljeet Singh), and that Babbu would be sending his address to the CHS. The CHS told J. SINGH he/she would be meeting the CLP client at 1:00 P.M.

29. On July 8, 2024, DOT-OIG and FBI Special Agents conducted surveillance of CLP client Daljeet Singh (D. Singh) and the CHS in and around the Milwaukee-Northeast DMV located at 6073 N. Teutonia Avenue, Milwaukee, WI 53209, and in and around the Milwaukee-Northwest DMV located at 7301 W. Mill Road, Milwaukee, WI 53218. DOT-OIG and FBI Special Agents were in contact with the CHS during the surveillance. During the surveillance, the CHS was unsuccessful in assisting D. Singh cheat on the Wisconsin DMV CDL exam in the manner described above, due to the CHS and D. Singh having difficulty using headphones at the first WI DMV, and the second WI DMV having no internet.

30. On July 8, 2024, the CHS and J. SINGH spoke via recorded telephone call. The CHS notified J. SINGH that he/she was unsuccessful in assisting D. Singh cheat on the WI DMV CDL exam. Specifically, the CHS told J. SINGH that he/she was told they were not allowed to use headphones.

31. On July 9, 2024, DOT-OIG and FBI Special Agents conducted surveillance of CLP client, D. Singh, and the CHS in and around the Milwaukee-Southeast DMV located at 5500 W. Grange Avenue, Greendale, WI 53129. DOT-OIG and FBI Special Agents were in contact with the CHS during the surveillance. During the surveillance, the CHS successfully assisted D. Singh in cheating on the Wisconsin DMV CDL exam in the manner described above, which resulted in D. Singh improperly passing the exam.



**Pictured above (right) is D. Singh taking the knowledge portion of the exam.**

32. On July 9, 2024, the CHS and D. Singh had a recorded conversation. D. Singh told the CHS that they would pay the CHS at their home since D. Singh needed to go see the doctor

and was in a hurry. D. Singh initially paid the CHS $1,500 for the CHS's assistance in helping D. Singh cheat on the WI CDL exam. However, the CHS told D. Singh that it was the incorrect amount and D. Singh provided the CHS additional funds, ultimately paying a total of $1,690.

33. On July 9, 2024, the CHS and J. SINGH spoke via recorded telephone call. The CHS told J. SINGH that D. Singh was initially trying to pay them only $1,500 but ended up paying the CHS $1,690. The CHS asked J. SINGH how he would like to be paid for his portion, and J. SINGH told the CHS to send his portion of the money through Cash App.

34. On July 9, 2024, DOT-OIG Special Agents were told by the CHS that J. Singh would be meeting the CHS at a UW Credit Union, located at 7902 S. Main Street, Oak Creek, WI 53154. J. SINGH was going to meet with the CHS to collect J. SINGH's portion of the money.

35. On July 9, 2024, DOT-OIG Special Agents observed the CHS meet with J. SINGH in the parking lot of a UW Credit Union, located at 7902 S. Main Street, Oak Creek, WI 53154. J. SINGH met with the CHS to collect his portion, 40%, of the $1,690 payment from D. Singh. The CHS provided $680 to J. SINGH for his portion of the payment.



36. On July 9, 2024, the CHS and J. SINGH had a recorded conversation. J. SINGH and the CHS discussed sourcing additional CLP clients. J. SINGH told the CHS he would talk to

11

another individual named "Sunny" about "Sunny" helping bring in more clients. However, J. SINGH told the CHS that Sunny would charge CLP clients too much.

## Operation 3

37. On July 17, 2024, DOT-OIG Special Agents conducted surveillance of CLP client **Kumar Surinder** (Surinder) and the CHS in and around the Milwaukee-Southwest DMV located at 5500 W. Grange Avenue, Greendale, WI 53129. DOT-OIG Special Agents were in contact with the CHS during the surveillance. During the surveillance, the CHS successfully assisted Surinder cheat on the Wisconsin DMV CDL exam (in the same manner as above) which resulted in Surinder improperly passing the exam. On July 17, 2024, Surinder paid the CHS $800 in cash for the CHS's assistance in helping Surinder pass the exam.



**Pictured above is Surinder taking the knowledge portion of the exam.**

38. On July 17, 2024, DOT-OIG Special Agents observed the CHS meet J. SINGH in the parking lot of the UW Credit Union, located at 7902 S. Main Street, Oak Creek, WI 53154. J. SINGH met with the CHS to collect his portion, 40%, of the $800 payment from Surinder. The CHS provided $200 to J. SINGH for his portion of the payment.



**Operation 4**

39.     On August 9, 2024, DOT-OIG and FBI Special Agents conducted surveillance of CLP client **Sukhmanpreet Singh** (S. Singh) and the CHS in and around the Milwaukee Southeast DMV located at 1835 College Avenue, South Milwaukee, WI 53172. DOT-OIG and FBI Special Agents were in contact with the CHS during the surveillance. During the surveillance, the CHS successfully assisted S. Singh in cheating on the Wisconsin DMV CDL exam. On August 9, 2024, Singh paid the CHS $1,300 in cash for the CHS's illegal assistance in helping S. Singh pass the knowledge exam.



**Pictured above is S. Singh taking the knowledge portion of the exam.**

40.     On August 9, 2024, an FBI Surveillance Team observed the CHS meet J. SINGH in the parking lot of a Kohl's, located at 9035 S. Howell Avenue, Oak Creek, WI 53154. J. SINGH

met with the CHS to collect his portion, 40%, of the $1,300 payment from S. Singh. The CHS provided $520 to J. SINGH for his portion of the payment.



## CONCLUSION

41. Based on the information provided above, I respectfully submit that probable cause exists to believe that **JASPREET SINGH** has committed wire fraud, in violation of Title 18 U.S.C. § 1343, and conspiracy in violation of Title 18 U.S.C. § 371.